IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MARKUS CRAWFORD,[1] # N-30639,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )  Case No. 12-cv-1135-MJR |
| | ) |
| **TIM QUIGLEY, MARCUS MARVIN,** | ) |
| **and UNKNOWN PARTIES,** | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

Plaintiff, currently incarcerated at Shawnee Correctional Center ("Shawnee"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is currently serving a 20 year sentence for burglary. Plaintiff claims that Defendants violated his due process rights in connection with the hearing on a disciplinary charge filed against him. In addition to the claims in the instant complaint, Plaintiff brought another action raising related claims arising out of the same disciplinary proceedings, *Crawford v. Quigley*, Case No. 12-cv-1079-GPM (filed October 9, 2012). That action was dismissed on November 19, 2012, for failure to state a claim upon which relief may be granted.

In the instant case, Plaintiff claims that on May 4, 2012, he received an illegible copy of a ticket written by Ms. Casteel (who is not a defendant in this action) (Doc. 1, p. 6). Because he could not read the document, he was unable to adequately prepare for his disciplinary

---

[1] Plaintiff's name is listed as "Marcus" Crawford by the Illinois Department of Corrections ("IDOC") on its inmate search page. Http://www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (last visited Nov. 21, 2012).

hearing.[2] Defendants Marvin and Quigley conducted the hearing on May 9, 2012. Plaintiff requested a continuance so that he could prepare a written statement after reviewing the charges. However, Defendant Quigley denied this request after giving Plaintiff a different copy of the ticket (Doc. 1, p. 7). Plaintiff was told to give a verbal statement at the hearing, which he did, telling the Defendants that he had been "set up" on the disciplinary charge after having a dispute with Ms. Casteel over law library access when he had a court deadline.

Plaintiff was found guilty of the charges, and was punished with a two-month demotion to C-grade, one-month restriction on commissary and recreation, and one month of disciplinary segregation (Doc. 1-1, p. 7).

In the instant complaint, Plaintiff's focus is on the written record summarizing the hearing held by the prison adjustment committee. He asserts that the "Record of Proceedings" section in the final summary report of the adjustment committee was very inaccurate as to what he told the committee in his defense. He also claims that the "Basis for Decision" did not contain any written disposition showing what facts, proof, or evidence the committee relied on to support the finding of guilt (Doc. 1, p. 7). He filed a grievance over the disciplinary action, but it was denied. Plaintiff argues that he had no appealable issues to raise in his grievance because of the failure of Defendants Quigley and Marvin to state the facts, proof, or evidence relied upon in their summary report (Doc. 1, p. 8). When Plaintiff met with Defendant Quigley about his grievance, Defendant Quigley admitted that they forgot to type in the information Plaintiff claimed was missing. *Id.* Plaintiff never received another copy of the written disposition with any further additions.

Under 28 U.S.C. § 1915A, the Court is required to conduct a prompt threshold

---

[2] Plaintiff's claims relating to the failure to give him adequate advance notice of the charges prior to his hearing, and refusal to grant a continuance or allow him to present a written statement, were brought in Case No. 12-cv-1079-GPM and have been addressed in that case.

review of the complaint. After fully considering the allegations in Plaintiff's complaint, the Court concludes that this action is subject to summary dismissal for failure to state a claim upon which relief may be granted.

Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988).

Although Plaintiff claims that the adjustment committee's final summary report lacked a summary of the "facts, proof, or evidence" relied upon by the committee in reaching its decision, an examination of the report submitted by Plaintiff shows that it includes a summary of the facts and evidence (Doc. 1-1, p. 7). Under the "Basis for Decision" section, there is a recitation of the contents of the IDR (Inmate Disciplinary Report) written by Ms. Casteel, summarizing her version of the facts and events which caused her to issue the IDR. The final two lines of this section include the following summary of Plaintiff's statement in his defense:

> Inmate statement, I have a dead line I got to finish. A/w Hilliard told me I could go to the law library last week. She did ask me twice was I on room restriction. The first time I said, I'm her[e] ain't I? The second time I just stared at her.

(Doc. 1-1, p. 7). While this summary may not be artfully drafted to explain the committee's rationale for its finding of guilt, it satisfies the *Wolff* requirement for a written statement of the reasons for the disciplinary action.

In addition to the procedural protections outlined in *Wolff*, the decision of the

disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). To determine whether this standard has been met, courts must determine whether the decision of the hearing board has some factual basis. *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000). The fact that there may be conflicts between the evidence offered by the inmate and that of prison staff does not mean that a hearing panel decision lacks factual support. The adjustment committee's final report submitted by Plaintiff includes Ms. Casteel's statement of the offense as well as a summary of Plaintiff's version of events (Doc. 1-1, p. 7). While this information may have been incomplete in Plaintiff's view, it cannot be said that the board's decision lacked any factual basis given the lenient standard of review in this Circuit.

Furthermore, even if Plaintiff had been denied one of the procedural protections in *Wolff*, he still may not have an actionable claim. Punishments such as a demotion in grade or commissary restriction do not amount to a constitutional deprivation, even when they are imposed after a flawed hearing process. *See, e.g., Thomas v. Ramos,* 130 F.3d 754, 762 n.8 (7th Cir. 1997). Moreover, a term of disciplinary segregation may not rise to the level of a constitutional deprivation of a liberty interest, depending on the length of disciplinary confinement and the conditions of that confinement. *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009).

When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). The Seventh Circuit has recently elaborated two elements for determining whether disciplinary segregation conditions impose atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion*, 559 F.3d at 697-98 (emphasis in original).

The first prong of this two-part analysis focuses solely on the duration of disciplinary segregation. For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence"). In these cases, the short duration of the disciplinary segregation forecloses any due process liberty interest regardless of the conditions. *See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement").

In the case at bar, Plaintiff was given only 30 days of disciplinary segregation – which, under the authority referenced in *Marion*, is not a long enough period of time to require factual inquiry into the conditions of segregation. Accordingly, the complaint fails to state a constitutional claim for the conduct of the disciplinary hearing, the written summary, or the resulting punishment. This action shall be dismissed with prejudice.

**Pending Motions**

Because this case shall be dismissed, Plaintiff's motion for appointment of

counsel (Doc. 2) is **DENIED**.

Plaintiff has submitted a motion for leave to proceed *in forma pauperis* ("IFP") (Doc. 3). He includes an affidavit stating that he has no employment, has received no income for the last twelve months, and has no assets or cash on hand. However, he has not tendered a certified copy of his inmate trust fund account statement. The Court has requested a trust fund statement for the six-month period immediately preceding the filing of this case from the Shawnee Correctional Center, but to date has not received information sufficient to determine the amount of Plaintiff's initial partial payment. Based on Plaintiff's affidavit of indigence, the Court concludes that he is unable to pay in full the $350.00 filing fee in this case at this time, and therefore it is appropriate to grant his motion for IFP. At such time as the Court receives from the institution's Trust Fund Officer the certified copy of Plaintiff's trust fund account statement as requested, the Court will enter an order authorizing the Trust Fund Officer to deduct from Plaintiff's trust fund account the initial partial filing fee, and to forward this payment to the Clerk of Court. The order shall also direct subsequent payments to be made pursuant to § 1915 until the filing fee is paid in full. Plaintiff's motion to proceed IFP in this case (Doc. 3) is **GRANTED**.

The Clerk of Court is **DIRECTED** to send a copy of this Order to Plaintiff and to the Trust Fund Officer at Shawnee Correctional Center.

**Disposition**

For the reasons stated above, this action is **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted. Plaintiff is advised that the dismissal of this action will count as Plaintiff's third "strike" under the provisions of 28 U.S.C. § 1915(g).

Two of Plaintiff's previously-filed lawsuits[3] have also been dismissed pursuant to § 1915A. Accordingly, if Plaintiff seeks to file any future civil action *while he is a prisoner*, he will no longer be eligible to pay a filing fee in installments using the *in forma pauperis* provisions of § 1915(a) and (b), unless he can establish that he is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).  If Plaintiff cannot make the necessary showing of imminent physical danger, he shall be required to pre-pay the full filing fee for any future lawsuit he may file while incarcerated, or face dismissal of the suit.

Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350 remains due and payable, regardless of the dismissal of the case. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

**IT IS SO ORDERED.**

**DATED:  November 21, 2012**

/s/  *Michael J. Reagan*
United States District Judge

---

[3] *Crawford v. Snyder*, No. 02-cv-1141-DRH (S.D. Ill.) (strike 1, dismissed March 7, 2005, for failure to state a claim upon which relief may be granted); *Crawford v. Quigley*, No. 12-cv-1079-GPM (S.D. Ill., filed Oct. 9, 2012) (strike 2, dismissed Nov. 19, 2012, for failure to state a claim).